UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

GRANT, KONVALINKA & HARRISON　　　)
　　　*Plaintiff*　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　No. 1:07-cv-88
　　　　　　　　　　　　　　　　　　　　)　　Collier/Carter
UNITED STATES OF AMERICA　　　　　)
　　　*Defendant*　　　　　　　　　　　　)

MEMORANDUM AND ORDER

Introduction

Plaintiff Grant, Konvalinka & Harrison's motion to compel discovery from the United

States [Doc. 15] is pending.  A hearing was held on the instant motion April 4, 2008 in which the

parties presented oral argument.  After the hearing, I allowed the parties to file supplemental

briefs, which they have done, and the matter is now ripe for review.  For the reasons stated

herein, the Plaintiff's Motion to Compel is DENIED.

Background

This is an action brought under 26 U.S.C. § 6532(a)(1) for judicial review of the IRS'

denial of the plaintiff's Claim for Refund and Request for Abatement of Penalty.  This action

arises from opinion letters issued by the plaintiff at the request of securities broker J.C. Bradford

regarding transactions related to certain revenue bonds (the Bonds) issued by J.C. Bradford.

Prior to the plaintiff's filling this action, the Internal Revenue Service (the IRS) issued a notice

on January 3, 2005 to plaintiff stating plaintiff had been assessed a penalty in the amount of

$570,879.49 pursuant to 26 U.S.C. § 6700 for making statements or causing another person to

make statements which were false or that the plaintiff should have known were false about the

1

tax exempt status of interest earned on the Bonds. Among these allegations, the IRS contended that the plaintiff caused the law firm of Peterson, Dillard, Young, Self & Ausselin to issue an inaccurate opinion letter regarding the tax exempt status of interest earned on the Bonds. The plaintiff eventually paid a total amount of $629,041.17 in penalties and then filed with the IRS its Claim for Refund and Request for Abatement of Penalty. J.C. Bradford, which issued the Bonds, seven other law firms that provided advice or opinions concerning the Bonds, and various investors in the Bonds entered into a settlement (the Closing Agreement) with the IRS in which they agreed to pay the IRS $30,000,000.00, part of which would be considered a penalty under 26 U.S.C. § 6700. The plaintiff was not a party to the Closing Agreement. In this current action, plaintiff denies that it made or caused another person to make any false statements or statements that it should have known were false concerning the tax exempt status of interest earned on the Bonds. Plaintiff seeks abatement of the penalty assessed under 26 U.S.C. § 6700 and a refund in the amount $620,041.17 plus interest. Plaintiff also seeks attorney's fees and costs.

There are two discovery requests at issue in plaintiff's motion to compel: Interrogatory Five and Document Request Three. Both of these requests concern the Closing Agreement and settlement communications made during negotiations for the Closing Agreement.

Interrogatory Five

Interrogatory Five states:

Identify all discussions, meetings, agreements, correspondence, or communications between you and any persons relating to the Closing Agreement or the Settlement Agreement concerning [the Bonds].

Plaintiff asserts this interrogatory simply asks the United States to list the requested information, much as one would prepare a privilege log. Basically, the log would provide the

2

form of communication; the persons involved; the date it was generated; the subject of the communication; and where this communication, if in tangible form, can be found.  (*See* Plaintiff's First Set of Discovery Requests to Defendant, Definitions at ¶¶ 10 and 11.)  While numerous objections to this interrogatory were interposed by the United States in its Response to the Plaintiff's motion to compel, the United States' objection to this interrogatory has been distilled in its supplemental brief into two objections: the information sought is not relevant and its disclosure is prohibited by 26 U.S.C. § 6103.

"Generally, parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  *Bennett v. Unum Life Ins. of America,* 321 F.Supp 2d 925, 929 (E.D. Tenn. 2004); *see also,* Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  Generally, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."  Fed. R. Civ. P. 401. In the instant case, however, Fed. R. Evid. 408, which stands at the core of the United States' relevancy argument, limits the relevancy of settlement agreements and settlement communications by restricting their use to certain specific circumstances:  Rule 408 provides:

Compromise and Offers to Compromise

(a) Prohibited uses.--Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

(1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to

3

compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted uses.--This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Thus, under Rule 408, settlements and conduct or statements made in settlement negotiations cannot be admitted into evidence to prove or disprove substantive elements of a claim or to impeach a witness on the basis of prior inconsistent statements.  Plaintiff argues that Rule 408 should not be used to restrict discovery even though it restricts the admissibility of evidence of settlements and settlement negotiations for substantive purposes at trial.  Plaintiff is correct that the admissibility of evidence is not the proper standard for discoverability.  However, in this situation – where the entire category of discovery requested by Interrogatory Five cannot be admitted for substantive purposes -- it is not clear to the undersigned how identification of that same category of communications is reasonably calculated to lead to the discovery of evidence which can be admitted at trial for *substantive* purposes.  And I conclude it is not.

On the other hand, under Rule 408, settlements and settlement negotiations are admissible to show bias or prejudice on the part of a witness.  Such evidence would be relevant to the claims in this case if a party to the Closing Agreement were a witness in the trial of this case.  Of course, whether a particular piece of evidence concerning the Closing Agreement or conduct or statements made during settlement negotiations is admissible at trial under Rule 408

4

would be for the trial court to decide.  As to the instant motion, however, the undersigned

concludes the United States' relevancy argument pursuant to Rule 408 fails to the limited extent

that Interrogatory Five is reasonably calculated to lead to the discovery of admissible evidence

bearing on bias or prejudice against the plaintiff by a party to the Closing Agreement who is

called as a witness at trial.

The United States also argues that 26 U.S.C. § 6103 serves as a complete bar to the

disclosure of the information requested by Interrogatory Five.  Section 6103 prohibits disclosure

of tax returns and tax return information by the United States.  *See* 26 U.S.C. § 6103(a).[1]

However, 26 U.S.C. § 6103(h) provides certain exceptions to the non-disclosure rule.  Both

parties seem to be in agreement that if there is no exception under 26 U.S.C. § 6103(h)(4), then

the United States will be prohibited by 26 U.S.C. § 6103(a) from disclosing the information the

plaintiff seeks in Interrogatory Five, which is simply to identify the requested items[2].  Plaintiff

---

[1]26 U.S.C. § 6103(a) provides in relevant part:
(a) General rule.--Returns and return information shall be confidential, and except
as authorized by this title--

(1) no officer or employee of the United States,

\*       \*       \*

shall disclose any return or return information obtained by him in any manner in
connection with his service as such an officer or an employee or otherwise or
under the provisions of this section. For purposes of this subsection, the term
"officer or employee" includes a former officer or employee.

[2]Tax return information is defined as:
**(A)** a taxpayer's identity, the nature, source, or amount of his income, payments,
receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability,
tax withheld, deficiencies, over assessments, or tax payments, whether the
taxpayer's return was, is being, or will be examined or subject to other
investigation or processing, or any other data, received by, recorded by, prepared
by, furnished to, or collected by the Secretary with respect to a return or with

5

argues that 26 U.S.C. § 6103(h)(4)(C) is an applicable exception in this case to the non-disclosure rule of 26 U.S.C. § 6103(a). 26 U.S.C. § 6103(h)(4)(C) provides:

> (4) Disclosure in judicial and administrative tax proceedings.--A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only–
>
>       *          *          *
>
> (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding;

> This exception is commonly referred to as the "transaction test" or "transactional test."

*See e.g., Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1, 19 (2000), *modified by* 2001 WL 1555306 (2001); *Lebaron v. United States*, 794 F. Supp. 947, 952 n. 5 (C. D. Cal. 1992); *Heimark v. United States*, 14 Cl.Ct. 643, 649 (C. Ct. 1988).

The plaintiff and the United States appear to agree as to three elements of the transactional test: first, the disclosure must occur in an administrative or judicial tax proceeding; second, a party to the proceeding must have a transactional relationship to the taxpayer whose return information is disclosed; and third, the disclosure must directly relate to the transactional relationship. However, the parties do not agree on the fourth element of the transactional test. Relying on *Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1, *5 -*6 (2000), *modified by*

---

> respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense,

26 U.S.C.A. § 6103(b)(2). Thus, merely identifying discussions, meetings, agreements, correspondence, or communications between the United States and any persons relating to the Closing Agreement would disclose tax return information.

6

2001 WL 1555306 (2001), the United States argues that the fourth element requires that the *tax return information* directly relate to or affect the resolution of an issue in the proceeding. (United States' Response at 12). Relying on *Davidson v. Brady*, 559 F. Supp. 456 (W.D. Mich 1983), *aff'd,* 732 F.3d 552 (6th Cir. 1984), plaintiffs, on the other hand, argue that the fourth element of the transaction test requires that the *transactional relationship* directly relate to or affect the resolution of an issue in the proceeding. (*See* Plaintiff's Reply to United States' Response, pp. 10-12).

Whether Section 6103(h)(4)(C) requires the transactional relationship or the tax return information to directly relate to an issue in the proceeding is, for purposes of this motion, immaterial. The undersigned concludes that disclosure of a third party's tax return information for the sole purpose of impeaching the credibility of a witness by showing bias or prejudice against the plaintiff fails to meet the "directly related" requirement found in either party's interpretation of the fourth element and is therefore impermissible under Section 6103(h)(4)(C). The undersigned reaches this conclusion based on the legislative history of Section 6103(h)(4) and the relevant case law.

The plaintiff has not cited a single case which has permitted the disclosure of third party tax return information under Section 6103(h)(4)(C) solely to show bias or prejudice on the part of a witness nor have I found such a case. Rather, tax return information which has been deemed properly disclosed under Section 6103(h)(4)(C), has been used to prove a substantive element in the case. For example, in *Davidson v. Brady*, 559 F. Supp. 456 (W.D. Mich 1983), *aff'd,* 732 F.3d 552 (6th Cir. 1984), the case relied upon by plaintiff to support its argument in favor of disclosure, the plaintiff Davidson sued two United States attorneys for alleged improper

disclosure of the plaintiff's federal income tax return information in a separate criminal prosecution against one Edward Solomon for violations of federal tax laws. In this criminal proceeding, Solomon pled guilty to conspiring to defraud the United States by impeding lawful government functions of the IRS in violation of 18 U.S.C. § 371. Upon his guilty plea, Solomon filed a "Statement of Financial Condition" with the United States Probation Office. Pursuant to the normal sentencing procedure, the United States Attorney's Office filed a memorandum with the Court to which it attached a Financial Statement which Davidson had previously filed with the IRS. The Financial Statement indicated that Solomon owed Davidson nothing and that Davidson owed Solomon $1,162,800. However, in the Statement of Financial Condition which Solomon had provided the Probation Office, Solomon had represented that he owed $500,000 to a corporation whose principal owner was Davidson. The issue in the *Davidson* case was Solomon's appropriate sentence and, more specifically, whether Solomon had made a material misrepresentation to the Probation Office in an effort to influence his sentence. *Id.* at 461. The *Davidson* Court concluded Davidson's Financial statement had been properly disclosed in the judicial tax proceeding against Solomon pursuant to Section 6103(h)(4)(C). In the *Davidson* case, the third party tax return information constituted evidence pertaining to substantive issues raised in the sentencing phase of Solomon's criminal proceeding: Solomon's ability to pay any required penalties and/or restitution and whether Solomon accepted responsibility for his illegal conduct. Thus on the question of whether third party tax information may be disclosed in a judicial tax proceeding solely to show bias on the part of a witness, *Davidson v. Brady* offers the plaintiff no support.

Another example is *Lebron v. United States*, 794 F. Supp. 947 (C.D. Ca. 1992). In

8

*Lebron*, the plaintiff brought suit against the United States alleging the United States had wrongly disclosed plaintiff's tax return information in a summons enforcement proceeding in federal court. The IRS was investigating the tax exempt status of the Church of Scientology Flag Service Organization (the Church") and issued a summons to the Church for certain information bearing on the Church's tax exempt status. The Church refused to comply with the summons and the IRS brought enforcement proceedings in federal court. The Church argued there was no good faith basis for the investigation, and the summons should be quashed. The United States, in an effort to show that a good faith basis did exist for the investigation, had proffered to the Magistrate Judge part of the plaintiff's tax return wherein the plaintiff sought a business expense deduction for counseling and job training services provided by the Church. The Church, on the other hand, argued that its counseling and training sessions are essentially religious services. The tax return information, which had a substantive bearing on the issue then before the Magistrate Judge, (was there a good faith basis for the investigation and the summons issued?) was found to be exempt under Section 6103(h)(4)(B) and (C) from the non-disclosure requirement. *Id.* at 951-52.

Finally, the last case the undersigned will examine as an example is *Ryan v. United States*, 1998 WL919881 (July 30, 1998 D. Md.) (unpublished), *aff'd*, 181 F.3d 90 (4th Cir. 1999). In *Ryan,* the government had prosecuted two individuals named Thai and Lam for tax evasion and making false statements on a loan application. The government's theory was that Thai and Lam, volunteer firefighters, who had worked a charity casino for the volunteer fire department, had skimmed money from the charity proceeds and failed to report that money on their income taxes or loan applications. Charles Ryan, the plaintiff in *Ryan v. United States*, brought an action

9

against the United States for improperly disclosing his tax return information in the prosecution of Thai and Lam. In the criminal prosecution, Ryan, who had supervised the casino charity, was called as a witness for the defendants. The government then used Ryan's 1993 tax return showing a reported income of only $1306 to cross-examine Ryan about the disparity between his lifestyle and his earnings so as to suggest the existence of a skimming operation involving Ryan, Thai and Lam. In determining that the disclosure of Ryan's 1993 tax return information was proper under Section 6103(h)(4)(C), the Court stated:

> Although he used the word "impeachment" at the bench conference, the AUSA's other statements, his questioning, and his theory of the case indicate that the purpose of the cross-examination was not merely to impeach Plaintiff's credibility. The AUSA used Plaintiff's reported income and his testimony as evidence that there was a skimming operation, and that Plaintiff, Thai, and Lam were all participants. Evidence suggesting a skimming operation was an important element of the Government's case because it provided the jury with an explanation of the source of Thai and Lam's unreported income. By the end of the cross-examination, the AUSA had presented evidence to the jury that there was a skimming operation and that Plaintiff was a participant in it, thereby providing the jury with evidence it could use to reach a guilty verdict. The Court believes that the disclosure was authorized by § 6103(h)(4)(C).

*Id.* at *3. Thus, the court found it vital to the disclosure question that the tax return information was used for more than just impeachment purposes but also to prove an essential element of the government's case against the defendant.

Further, the legislative history of Section 6103(h)(4)(C) indicates that Congress did not intend for this exception of the non-disclosure rule to disclose third party tax return information for impeachment purposes only. Under the Internal Revenue Code of 1956, income tax returns were considered public records open to inspection by order of the President of the United States or pursuant to rules and regulations promulgated by the Treasury Secretary and approved by the

10

President. *See* 26 U.S.C. § 6103(a) (1956); *See* also Allan Karnes, Roger Lirely, "Striking Back at the IRS: Using Internal Revenue Code Provisions to Redress Unauthorized Disclosures of Tax Returns or Return Information," 23 Seton Hall L. Rev. 924, 924-26 (1993) (providing a discussion of the non-disclosure requirement and exceptions thereto after the Tax Reform Act of 1976.) Concluding that tax return information had often been disclosed for abusive purposes, Congress enacted the Tax Reform Act of 1976 which instituted major changes in the accessibility of another person's income tax returns or return information. Karnes and Lirely, *supra.* Section 6103(a) of the Internal Revenue Code of 1956 was completely revised to provide the non-disclosure provision, Section 6103(a), which exists in its essential form today, and Subsection 6103(h) was added to provide specifically delineated exceptions to the non-disclosure provision.

In examining the legislative history of Section 6103(h)(4)(C), it is helpful to understand that Congress discussed Section 6103(h)(4)(C) (the transactional test) in conjunction with Section 6103(h)(4)(B) (the item test). Congress also discussed Sections 6103(h)(4)(C) and (B) in conjunction with the exceptions found in 26 U.S.C. § 6103(h)(2)(B) and (C).

Section 6103(h)(4)(B), sometimes referred to as the "item test," provides an exception to the non-disclosure requirement of tax return information "if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding." 26 U.S.C. §§ 6103(h)(2)(B) and (C) are generally considered to encompass the same item and transactional tests as found in 26 U.S.C. § 6103(h)(4)(B) and (C), except that under Section 6103(h)(2) the disclosure is made to employees of the Justice Department primarily for use in Grand Jury

11

proceedings.[3] *Heimark v. United States*, 14 Cl. Ct. 643, 648 n. 9 (Cl. Ct. 1988).

Now, turning to the legislative history, the General Explanation of the Tax Reform Act of 1976 (the General Explanation) sheds light upon Congress' intentions as to what does and what does not constitute permissible exceptions to the non-disclosure rule of Section 6103(a) under the item test and the transactional test. The General Explanation begins with a review of the then current status of law regarding disclosure of tax return information: "In civil tax cases, third-party returns may be used to develop evidence pertaining either directly to the tax liability of a taxpayer, or to impeach the testimony of the party whose tax liability is at issue (or to impeach the testimony of witnesses testifying on his behalf). Sen. Rep. No. 94-938 (1976) at 324, U.S.Code Cong. & Admin.News 1976, p. 3754. Then, under the heading "Reasons for change,"

---

[3] 26 U.S.C. § 6103(h)(2)(B) and (C) provide:

**Department of Justice.**--In a matter involving tax administration, a return or return information shall be open to inspection by or disclosure to officers and employees of the Department of Justice (including United States attorneys) personally and directly engaged in, and solely for their use in, any proceeding before a Federal grand jury or preparation for any proceeding (or investigation which may result in such a proceeding) before a Federal grand jury or any Federal or State court, but only if--

* * *

**(B)** the treatment of an item reflected on such return is or may be related to the resolution of an issue in the proceeding or investigation; or

**(C)** such return or return information relates or may relate to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation.

the General Explanation states:

> While the committee decided to maintain the present rules pertaining to the
> disclosure of returns and return information of the taxpayer whose civil and
> criminal tax liability is at issue, restrictions were imposed in certain instances at
> the pre-trial and trial levels with respect to the use of third-party returns where,
> after comparing the minimal benefits derived from the standpoint of tax
> administration to the potential abuse of privacy, the committee concluded that the
> particular disclosure involved was unwarranted.

*Id.* Finally, under the heading "Explanation of Provision," the General Explanation offered the

following clarification of the non-disclosure exceptions found in 26 U.S.C. §§ 6103(h)(2)(B) and

(C) and 26 U.S.C. §§ 6103(h)(4)(B) and (C):

> The return or return information of a third party would be disclosed to the Justice
> Department in the event that the treatment of an item reflected on his return is or
> may be relevant to the resolution of an issue of the taxpayer's liability under the
> Code. Thus, for example, the returns of subchapter S corporations, partnerships,
> estates and trusts may reflect the treatment of certain items which may be relevant
> to the resolution of the taxpayer's liability because of some relationship (i.e.,
> shareholder, partner, beneficiary) of the taxpayer with the corporation,
> partnership, estate, or trust.
>
> In cases involving the assessment of a penalty upon a person for failure to pay
> over withholding taxes, the reflection of such items on a corporate return as wages
> paid, taxes withheld, and the corporate office held by the person, may be relevant
> to the resolution of the issue of liability for the penalty.
>
> * * *
>
> The return or return information of a third party would also be disclosed to the
> Justice Department where the third party's return or return information relates or
> may relate to a transaction between the third party and the taxpayer whose tax
> liability is or may be at issue and the return information pertaining to that
> transaction may affect the resolution of an issue of the taxpayer's liability. For
> example, the treatment on a buyer's return regarding his purchase of a business
> would be relevant to the seller's tax liability resulting from the sale of the
> business. The buyer may be amortizing what he claims to be a covenant not to
> compete, whereas the seller may be claiming capital gain treatment upon the
> alleged sale of "goodwill."

\* \* \*

> The disclosure of a third party return in a tax proceeding (including the U.S. Tax Court) will be subject to the same item and transactional tests described above, except that such items and transactions must have a direct relationship to the resolution of an issue of the taxpayer's liability.

> *Only such part or parts of the third party's return or return information which reflects the item or transaction will be subject to disclosure both before and in a tax proceeding. Thus, the return of a third-party witness could not be introduced in a tax proceeding for purposes of discrediting that witness except on the item and transactional grounds stated above.*

Sen. Rep. No. 94-938 (1976) at 325-26, U.S.Code Cong. & Admin.News 1976, pp. 3754-3755

(italics added). Further, in the House of Representative conference report on the proposed

exceptions to the non-disclosure requirement of the Tax Reform Act of 1976, the report stated:

> The return or rerun information could be introduced into an administrative or judicial hearing if the court finds that it is probative of a matter in issue relevant in establishing the commission of a crime or the guilt of a party. The credibility of a witness does not constitute a matter in issue for purposes of these rule. Thus, under the conference agreement, a return or return information would not be admissible for purposes of "collateral impeachment" (i.e. discrediting a witness on matters not bearing upon the question of the commission of a crime on the guilt of a party).

H.R. Conf. Rep. 94-1515, 1976 U.S.C.C.A.N. 4117, 4187.

Based on this legislative history, I conclude Congress determined that, when considering

the use of tax return information for impeachment purposes only, the potential abuse of the

information outweighed the potential benefits of the information to effective administration of

the tax laws, and Congress therefore prohibited disclosure of third party tax returns for

impeachment purposes only.

In the instant case, to the extent that any of the information requested by Interrogatory

Five bears on bias or prejudice of a witness and would therefore be admissible under Fed. R. Civ.

P. 408, disclosure of that information is nevertheless barred by 26 U.S.C. § 6103(a). The

14

exception to the non-disclosure rule that the plaintiff relies upon, 26 U.S.C. § 6103(h)(4)(C), does not apply where a party to a judicial tax proceeding seeks third party tax return information solely to show bias by the third party taxpayer who will be a witness against the party in the judicial tax proceeding.

<u>Document Request Three</u>

Document Request Three states, "[i]f not previously produced, produce any and all documents, including, but not limited to, any closing agreements and/or settlement agreements between you or any other person relative to [the Bonds.]" While the plaintiff treats this request as seeking all document evincing settlement communications and the Closing Agreement relative to the Bonds, the United States is correct that this request technically asks for any and all documents in the possession of the United States. However, in an effort to reach a reasonable interpretation of this request, the United States interpreted it to ask for the Closing Agreement between the IRS and any other person relative to the Bonds. In responding to this request as interpreted, the United States did not object on the basis of the settlement privilege, a privilege which the parties seem to agree does not apply to the Closing Agreement. In an effort to expedite discovery matters, however, the United States has offered to treat this request as encompassing settlement communications and asserts the settlement privilege bars their discovery. Plaintiff contends the United States has waived the settlement privilege because the United States did not object originally to Request Three on the basis of the settlement privilege. But because Request Three as worded by the plaintiff did not implicate the settlement privilege, the United States was not required to assert it at that time.

In an effort to expedite discovery matters, the undersigned will interpret Request Three as

encompassing settlement communications and allow the United States to assert the settlement

privilege.  In doing so, I note that the plaintiff was given and has taken the opportunity to address

the United States's objection based on the settlement privilege in its briefing subsequent to the

Court's hearing on the plaintiff's motion to compel.  Thus, this plaintiff has been given due

process on this issue.

In Request Three, plaintiff seeks documents constituting settlement communications and

the Closing Agreement related to the Bonds.  Plaintiff argues that Section 6103(h)(4)(C) applies

to allow the plaintiff to obtain those documents.  However, as previously discussed in relation to

Interrogatory Five, Fed. R. Evid. 408 does not allow the use of settlement communications and

settlements themselves as evidence of the elements of the underlying claim or defense, and,

therefore, because this discovery request targets an entire category of documents which cannot be

used for substantive purposes, this discovery request is not reasonably calculated to lead to the

discovery of evidence which is admissible for substantive purposes, *i.e.*, to prove an element of a

claim or defense in the case.  However, Rule 408 allows the use of settlement communications

and settlements themselves as evidence of bias or prejudice on the part of a witness, but Section

6103(h)(4)(C) does not.[4]   Thus, where Rule 408 might allow some limited use of the information

---

[4]The United States also argues that Section 6103(h)(4)(C) does not apply because neither
the settlement communications nor the Closing Agreement are directly related to the resolution
of an issue in this case.  The United States argues this is so because the IRS may take
inconsistent positions to settle bond taxability issues with bond holders by allowing bondholders
to take exemptions on interest earned from the bonds while still pursuing penalties under Section
6700 against tax advisors for false statements concerning the taxability of interest earned on
bonds.  (*See* House Conf. Rep. No. 101-247, 1989 U.S.C.C.A.N. 1906) ("section 6700 applies
even if the Service has insulated bondholders from the effect of a declarant of taxability of a
bond sold as tax-exempt by entering into a closing agreement with the issuer of the bonds.")
This argument, however, brings the undersigned squarely back to the question of what are the
elements of Section 6103(h)(4)(C), and neither party agrees on the answer. *See supra* at 6.

16

sought by plaintiff, Section 6103(a) forbids it.

The United States also asserts the settlement privilege is a bar to plaintiff's discovery of settlement communications leading up to the Closing Agreement. In *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), the Sixth Circuit created a federal privilege protecting statements made in furtherance of a settlement from third party disclosure. *Goodyear Tire & Rubber*, 332 F.3d at 983 ("any communications made in furtherance of settlement are privileged."); *Westlake Vinyls, Inc. v. Goodrich Corp.*, 2007 WL 1959168 *3 (W.D. Ky., Jun. 29, 2007)(unpublished) ("Goodyear holds that communications made in furtherance of settlement negotiations are not discoverable."). While the *Goodyear* decision has been criticized[5], it is, nevertheless, the law in the Sixth Circuit until an en banc panel of the Sixth Circuit or the Supreme Court overturns the *Goodyear* decision. The *Goodyear* privilege does not, however, apply to the Closing Agreement which is a finalized settlement – not communications made in *furtherance* of a settlement:

> *Goodyear* does not create a broad privilege protecting from discovery any document or communication arguably related to settlement negotiations, fruitful or otherwise. Rather, by its own language, it protects only "communications made in furtherance of settlement." *Goodyear*, 332 F.3d at 983 (emphasis added). As such, documents such as finalized settlement agreements, regardless of whether the parties designate them confidential, and other documents withheld by Goodrich are not necessarily protected from third-party discovery.

---

However, the undersigned need not address this issue since, regardless of how one interprets the elements of Section 6103(h)(4)(C), tax return information may not be used solely to show bias under Section 6103(h)(4).

[5]*See e.g., Grupo Condumex, S.A. de C.V. v. SPX Corp.*, 331 F. Supp.2d 623, 629 n. 3 (N.D. Ohio 2004) (stating that while the court is bound by the *Goodyear* precedent to apply the settlement privilege to settlement communications, *Goodyear* was a diversity case and, as such, should have been governed by the controlling state's law of privilege.)

17

*Westlake Vinyls*, 2007 WL 1959168 *3. Thus, the undersigned holds that communications made in furtherance of the Closing Agreement are privileged. Plaintiff correctly argues, however, that the United States must present a privilege log if the United States is going to successfully assert the privilege for communications made in furtherance of settlement, and the United States has not done so in this case. *See* Fed. R. Civ. P. 26(b)(5)(requiring a party who withholds discovery on the basis of a privilege to provide a privilege log). However, given the extremely broad definition of tax return information under Section 6103, producing a privilege log would violate the non-disclosure requirement of Section 6103(a). Since the settlement communications are also protected under Section 6103(a) and Rule 408, it is unnecessary for the United States to rely upon the settlement privilege, and the undersigned concludes the privilege is not required in this case. The information requested is protected by Rule 408 and Section 6103(a). Thus the United States need not produce a privilege log.

Plaintiff also argues, relying on *Rowley v. United States*, 76 F.3d 796 (6th Cir. 1996), that J.C. Bradford has waived all privacy interests in the contents of the Closing Agreement by publishing on its website that it, as well as others involved in the issuance of the Bonds, had entered into a Closing Agreement with the IRS for $30,000,000.00. The relevant facts in *Rowley v. United States*, 76 F.3d 796 (6th Cir. 1996) are these: after the Rowleys failed to pay federal income taxes owed, the IRS informed the Rowleys that it intended to seize property owned by the Rowelys and sell it to satisfy their debt. The IRS filed a notice of federal tax lien with the Registrar of Deeds in the county where the property was located. The notice included and made public the Rowleys' names and address, the kind of tax they owed, the date of assessment and the unpaid balance. The IRS then ran ads in two newspapers in an effort to sell

18

the property. Prospective buyers contacted the IRS who sent them a packet of information. The ads and packet provided no more tax return information than was in the federal tax lien notice. The Rowleys sued the IRS for improperly disclosing their tax return information in the packets sent to prospective buyers. The Sixth Circuit held that "once a taxpayer's return information becomes part of the public domain through the filing and recording of a judicial lien, it loses its confidentiality and is not protected by Section 6103 if republished by the Internal Revenue Service for tax administration purposes." *Id.* at 801. An important factor in the *Rowley* Court's decision was that neither the ads not the packet of information included any tax return information which had not already been lawfully disclosed in the tax lien notice:

> the information in the public notices, and the packages sent to interested purchasers did no more than re-state the Rowleys' names and address, the legal description of their property, and the reason for the seizure. The material disclosed by the Internal Revenue Service was precisely the same information that was recorded in the Register of Deeds' offices, and was clearly already a part of the public domain.

*Id.* In the instant case, plaintiff argues that, pursuant to *Rowley*, because *some* of the terms of the Closing Agreement have been made public, the parties to the Closing Agreement have waived their right to privacy and the IRS must make *all* the terms to the Closing Agreement public. This interpretation of *Rowley* is incorrect. Under *Rowley*, the IRS can, at most, re-publish the Closing Agreement terms already published without violating the Section 6103(a) non-disclosure requirement, but it cannot disclose terms not previously disclosed. Of course, there is no reason for the IRS to re-publish the terms already disclosed since the plaintiff already knows these terms.

The plaintiff also asserts that the United States cited the Closing Agreement in its pre-

19

assessment letter sent to plaintiff, and "[t]he government should not be allowed to assert the Closing Agreement as part of its pre-assessment letter, but now attempt to shield that Closing Agreement from discovery." (Plaintiff's brief at 5-6, Doc. 16). The United States admits that the pre-assessment letter mentions the Closing Agreement, but asserts that the pre-assessment letter does not analyze the terms of the Closing Agreement and mentions it only to show the plaintiff was not a party to the Closing Agreement which would preclude the IRS from assessing a penalty against the plaintiff. The United States further avers, "the United States has not relied and will not rely on the contents of the closing agreement to support any claim or defense at trial." (United States' Opposition to Motion to Compel at 6, Doc. 18). Based on the information before me, it does not appear that the IRS is attempting to use part of the Closing Agreement as evidence against the plaintiff in the instant case while simultaneously arguing that the remainder of the Closing Agreement cannot be disclosed under Section 6103(a). If the IRS were attempting to use the non-disclosure requirement as it applied to the Closing Agreement as both "sword and shield" in this litigation, the outcome might be different, but there is nothing before me to support this contention.[6]

Finally, plaintiff correctly observes that the documents requested by Request Three as discussed during the hearing on April 4, 2008 before the undersigned, can be divided into three categories, the first of which the United States has already provided. Those categories are: 1) documents provided to the United States that are "relative to" the Bonds at issue but do not

---

[6]The Court does not have a copy of the pre-assessment letter and has only the parties' representations as to what the pre-assessment letter actually says about the Closing Agreement. The fact that the Closing Agreement is referenced in the pre-assessment letter, as stated by the plaintiff, does not support a contention that the United States is using or will use parts of the Closing Agreement as evidence to prove a claim or defense in this litigation.

contain actual settlement negotiations; in other words, they were pre-existing documents which may have been exchanged during the negotiations process but were not created for the purpose of negotiating the Closing Agreement, 2) actual settlement negotiations, and 3) the Closing Agreement itself. The United States contends, correctly the undersigned thinks, that the first category of documents have been disclosed pursuant to the "item test" exception, Section 6103(h)(4)(B), of the non-disclosure requirement. As explained by the United States:

> In the course of [the Bonds issue] audit, the IRS received numerous 1991 and 1992 documents, including bond transcripts, Grant Konvalinka opinion letters, attorney billing records, and miscellaneous correspondence. Also, the IRS interviewed several of the parties relating to the 1991 and 1992 bond transactions and created written records of those interviews. Finally, the IRS organized and described all the facts it discovered surrounding the taxability of the bonds in proposed and preliminary determination reports.

> The information described above and complied by the United States in conjunction with the issuer audit constitutes third-party tax return information of the bond issuers. Despite its character as confidential third party return information, the United States has produced or agreed to produce to Grant Konvalinka the documents described above because they (for better or worse) directly relate to what 1992 statements Grant Konvalinka made, whether those 1992 statements were true or false, and why Grant Konvalinka had reason to know the statements were false.

(United States' Sur-Reply at 1-2, Doc. 20) (parentheses original). The undersigned finds no inconsistencies between the positions taken by the United States as to the first category of documents compared to the last two categories of documents. The first category can be used by either the plaintiff or the United States as evidence on the substantive issues in the case; the last two categories, for reasons already discussed, cannot. Thus disclosure of the first category of documents is appropriate under Section 6103(h)(4); disclosure of the second two categories are not.

<u>Conclusion</u>

The undersigned is not without sympathy for the plaintiff in this situation.  One can easily understand why the plaintiff would want evidence concerning the substance of settlement negotiations and the Closing Agreement itself - either as substantive evidence or as impeachment evidence.   But no matter how the undersigned tugged and pulled, I could not completely extricate the information sought by the plaintiff from the fly paper prohibitions of Section 6103(a) and Fed. R. Evid. 408.  For the reason stated herein, plaintiff's motion to compel [Doc. 15] is DENIED.

SO ORDERED.

ENTER:

Dated:  June 27, 2008          *s/William B. Mitchell Carter*
                                UNITED STATES MAGISTRATE JUDGE